UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIETTE ANN PETERSON MOORE,

                              Plaintiff,

                  -vs-                                    14-CV-583-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ.)
               Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (ROBERT R.
               SCHRIVER, Special Assistant United States Attorney, of Counsel),
               Buffalo, New York, for Defendant.

## <u>INTRODUCTION</u>

        This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated January 11, 2016 (Item 14).

        Plaintiff Juliette Moore initiated this action on July 18, 2014 pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of

the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 8, 12).  For the following reasons, plaintiff's motion is granted

and the Commissioner's motion is denied.

**BACKGROUND**

Plaintiff was born on July 9, 1979 (Tr. 221).[1]  She protectively filed an application for SSI benefits on October 31, 2012, alleging disability due to pain, depression, and anxiety, with an onset date of July 27, 2009.  *Id.*  The application was denied administratively on February 1, 2013 (Tr. 85-97, 113-17) and upon reconsideration on April 26, 2013 (Tr. 98-112, 121-27).  Plaintiff then requested a hearing, which was held on December 4, 2013, before Administrative Law Judge ("ALJ") David S. Lewandowski (Tr. 41-65).  Plaintiff appeared and testified at the hearing, and was represented by counsel. A vocational expert ("VE") also appeared and testified.

On February 6, 2014, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 13-34).  At the hearing, plaintiff amended the alleged onset date to the date of application, October 31, 2012 (Tr. 16).  The ALJ found that plaintiff had the following severe impairments: right ankle osteoarthritis, asthma, vertigo, headaches, mood disorder, post- traumatic stress disorder ("PTSD"), and anxiety with panic attacks.  He also found the following non-severe impairments: fibromyalgia, right flank pain, abdominal pain, and neck and low back problems (Tr. 19).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that none of plaintiffs impairments met or medically equaled any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 16-18).  The ALJ discussed the evidence in the record,

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner in this action (Item 7).

including medical records, reports from treating and consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff has the residual functional capacity ("RFC") to perform sedentary work with specific postural limitations related to climbing, avoidance of pulmonary irritants, limitations to simple tasks with occasional interaction with others, and no travel (Tr. 22).  The ALJ found that plaintiff had no past relevant work but, considering her age (younger individual), education (GED), experience, and RFC, and relying on the testimony of a VE, determined that plaintiff could adjust to other work that exists in significant numbers in the national economy (Tr. 32-33).  Accordingly, the ALJ found that plaintiff has not been disabled within the meaning of the Act from the onset date of October 31, 2012 to the date of the decision (Tr. 34).

The ALJ's decision became the final decision of the Commissioner on May 22, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 9-12), and this action followed.

In her motion for judgment on the pleadings, plaintiff raises a single issue - whether substantial evidence supports the ALJ's conclusion that plaintiff can perform jobs that exist in significant numbers in the national economy.  *See* Items 8-1, 13.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence.  *See* Item 12-1.

## DISCUSSION

I. **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the

3

Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including,

4

in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.   42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.   "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).   Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."

*Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf.*

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the

medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the

court "must show special deference" to credibility determinations made by the ALJ, "who

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight*

*Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present

proof sufficient to show that she suffers from a medically determinable physical or mental

impairment "which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months …," 42 U.S.C.

§ 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do [her] previous

work but cannot, considering [her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy …." 42 U.S.C.

§ 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set

forth a five-step process to be followed when a disability claim comes before an ALJ for

evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§ 416.920. First, the ALJ

must determine whether the claimant is presently engaged in substantial gainful activity.

If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which

is an impairment or combination of impairments that has lasted (or may be expected to

last) for a continuous period of at least 12 months which "significantly limits [the claimant's]

physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(a)(4)(ii); *see*

6

*also* § 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv).  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not

accounted for in the Grids) that "significantly limit the range of work permitted by [her] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III.    The ALJ's Disability Determination

In this case, ALJ Lewandowski determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since October 31, 2012, the alleged onset/application date (Tr. 19).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 19-21).

At step four, the ALJ discussed the medical evidence of record and hearing testimony.  He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not fully credible"  (Tr. 24).  The ALJ afforded significant weight to the opinion of psychiatric consultative examiner Dr. Gregory Fabiano, Ph.D. (Tr. 32, 1056-70) and some weight to the consultative examination of Dr. Abrar Siddiqui (Tr. 1071-81). Based on his review of the evidence, the ALJ found that plaintiff had the RFC to perform sedentary work with the following non-exertional limitations: no ladder, rope, or scaffold climbing; avoidance of pulmonary irritants; plaintiff can understand, remember, and carry out simple instructions and perform

simple tasks, with occasional contact with others; no travel; plaintiff could adjust to frequent changes in the workplace setting; and plaintiff could be off-task 10% of the time (Tr. 22).

The ALJ heard the testimony of VE Rachel Duchon.  Ms. Duchon testified that she holds a Masters of Science degree in counseling and a Masters in Business Administration.  She is a certified rehabilitation counselor, vocational expert, licensed mental health counselor, and disability analyst (Tr. 65).  Based on a hypothetical person with the RFC as found above, Ms. Duchon testified that plaintiff could perform the position of telephone quotation clerk, Dictionary of Occupational Titles ("DOT") # 237.367-046, a sedentary, unskilled job with 966,150 positions in the national economy and 84,940 in New York State. She could also perform the job of envelope addresser, another unskilled, sedentary position, DOT # 209.587-010, with 96,560 positions in the national economy and 16,500 in New York State.  Finally, she could perform the job of call-out operator, DOT# 237.367-014, an unskilled, sedentary job with  51,650 positions in the national economy and 2,820 in New York State (Tr. 67-68).

On cross examination, Ms. Duchon stated that jobs are grouped in the DOT and that the number of jobs is published by the U.S. Bureau of Labor Statistics ("BLS").  The BLS specifies the number of jobs by group. For instance, the telephone quotation clerk job falls within a group of 14 different job titles under the group heading "Receptionists and Information Clerks." The BLS does not individually specify the number of jobs in each group.  The number of jobs to which she testified was the number of jobs in the larger job grouping.  Ms. Duchon could not give an exact number of telephone quotation clerk, envelope addresser, or call-out operator jobs in the national economy (68-70).

Relying on the VE's testimony, the ALJ found that plaintiff was capable of making

9

a successful adjustment to other work that exists in significant numbers in the national economy. Accordingly, the ALJ found that plaintiff was not disabled under the Act (Tr. 34).

## IV.    Plaintiff's Motion

### A.  Substantial Evidence

Plaintiff argues that the VE's testimony was insufficient to support a finding that a significant number of jobs exist in the national economy that she can perform because the VE failed to specify the number of positions for a telephone quotation clerk, envelope addresser, or call-out operator that exist in the national economy. The court agrees that remand is required, as the ALJ's determination is not supported by substantial evidence.

Where a claimant is able to demonstrate that her impairments prevent a return to past relevant work, the burden shifts to the Commissioner, at step five, to prove that a job exists in the national economy that the claimant is capable of performing. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *White v. Sec'y of Health & Human Servs*., 910 F.2d 64, 65 (2d Cir. 1990). As discussed above, when a claimant's non-exertional limitations significantly diminish her ability to perform the full range of work at any exertional level, then the ALJ should rely on "either the testimony of a VE or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations." *Bapp,* 800 F.2d at 606. According to the regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). This definition assures that individuals are not denied benefits on the basis of "[i]solated jobs

that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] lives." 20 C.F.R. § 416.966(b). "Courts have generally held that what constitutes a 'significant' number is fairly minimal." *Fox v. Comm'r of Soc. Sec.*, 2009 WL 367628, at *20 (N.D.N.Y. Feb.13, 2009).

Here, the ALJ relied on the testimony of a VE, who in turn relied on the DOT job titles and job numbers from the BLS, to determine that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 34).  The VE testified that a hypothetical claimant with plaintiff's functional limitations and capabilities could perform the jobs of telephone quotation clerk, envelope addresser, and call-out operator, and provided numbers of positions that exist in the national and state economy for those jobs (Tr. 67-68).  However, upon questioning by plaintiff's counsel, the VE explained that the numbers to which she testified pertained to a broad range of positions, not just those jobs that plaintiff could perform based on her RFC. Significantly, the VE testified that she could not even provide a "ballpark estimate" of the number of jobs she testified that plaintiff could perform (Tr. 69-70). Subsequently, the ALJ failed to make any inquiry into the foundation and reliability of the job numbers provided by the VE (Tr. 73).

Under these circumstances, the VE's testimony does not constitute substantial evidence to support the ALJ's step five conclusion because it did not provide a "fair estimate of the jobs available" that plaintiff can actually perform.  *Jones–Reid v. Astrue*, 934 F.Supp.2d 381, 407 n. 13, *aff'd* 515 F. App'x 32 (2d Cir. 2013); *see Decker v. Astrue,* 2014 WL 2176960, *6 (N.D.N.Y. May 22, 2014) (remand required where VE's job numbers pertained to a broad range of positions, including jobs that plaintiff could not perform based

on her RFC); *Marvin v. Colvin,* 2014 WL 1293509, *10 (N.D.N.Y. Mar. 31, 2014) (same); *Rosa v. Colvin*, 2013 WL 1292145, at *9–10 (N.D.N.Y. Mar.27, 2013) (holding that the Commissioner did not sustain her burden at step five, where the ALJ relied on a VE's testimony concerning numbers of jobs available that pertained to a broad category of jobs, including those which the claimant could not perform); *Johnston v. Barnhart*, 378 F.Supp.2d 274, 283 (W.D.N.Y. 2005) (finding that the ALJ erred where the VE's testimony concerning numbers of jobs available pertained to broad category of jobs that included positions other than the two jobs claimant could perform within her limitations and the VE could not say how many positions existed for those two jobs); *cf. Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009) (concluding that a VE's testimony was reliable because it was apparent that the VE arrived at her estimated figures for the positions which the claimant could actually perform by discounting from the total numbers for numerous DOT titles).  Accordingly, the matter must be remanded for further administrative proceedings.


## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 8) is granted, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.  Defendant's motion for judgment on the pleadings (Item 12) is denied. The Clerk of the Court is directed to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:   April 4, 2016